UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| BRENDA JAMES, ) | |
| ) | |
| Plaintiff ) | CIVIL ACTION NO.: |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| BOSTON POLICE DEPARTMENT, ) | |
| CAPTAIN PAUL RUSSELL, ) | |
| DETECTIVE DANIEL HUMPHRIES, ) | |
| CAPTAIN MARK HAYES, ZELMA ) | |
| GREENSTEIN, and CITY OF BOSTON, ) | |
| Defendants ) | |
| _____) | |

**COMPLAINT**

**INTRODUCTION**

Plaintiff, Brenda James ("the Plaintiff") brings this action against her former employer, the City of Boston Police Department and the City of Boston, and individuals Captain Paul Russell, Detective Daniel Humphries, Captain Mark Hayes, and Zelma Greenstein ("the Defendants"). Ms. James alleges that the Defendants discriminated against her based on her race and gender and also retaliated against her for filing a criminal charge and an action in Massachusetts Commission Against Discrimination (MCAD).

**I.     PARTIES**

1.      Plaintiff, Brenda James is an individual who resides in Boston,  Massachusetts..

2.      The Boston Police Department (agent of the City of Boston) was the employer of the Plaintiff, and is currently the employer of Detective Daniel Humphries, Defendant Paul

1

Russell, and Captain Mark Hayes and Zelma Greenstein. The Boston Police Department has a principal place of business at One Schroder Plaza, Boston, Massachusetts, 02120.

## II.  JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq., including 29 U.S.C. § 626(c), and 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1391(b).


## III.     FACTUAL ALLEGATIONS

5.      The Boston Police Department hired the Plaintiff in 1994, who worked as a patrol officer with the City of Boston for over twenty (20) years without any disciplinary history.

6.      The Plaintiff was employed for several years during her tenure with the Boston Police Department as a community police officer working primarily with youth, juveniles at risk as well as their families, and schools/social service agencies.

7.      Sometime in 2012 Defendant Russell was the direct supervisor of the Plaintiff in her capacity as a Police Officer with the Boston Police Department.

8.      In 2010, the Boston Police Department required the Plaintiff to have her annual drug test within sixty (60) days of her birthday.

9.      Plaintiff attempted to reschedule her test because her hair was braided, and due to her race her hair requires special attention to unbraid. The Boston Police Department refused

to allow her to reschedule the test.

10.     The medical unit then proceeded to detain the Plaintiff for 2 ½ hours as she attempted to reschedule her exam.

11.     The Plaintiff, anticipating that she may have a problem with the medical unit, attempted to gain support from her Union. Union V.P. Ronald MacGillivray told her that she would not have a problem rescheduling her test. The Plaintiff called Mr. MacGillivray for support. In response, Mr. MacGillivray explained to the Plaintiff that the medical unit wanted her to take the test "for some unspecified reason" and "she should stop being a drama queen."

12.     Upon information and belief, the Boston Police Department did not make any attempts to investigate the Medical Unit's harassing behavior toward the Plaintiff. Upon information and belief, in 2009 Defendant, Zelma Greenstein (nurse practitioner of the medical unit) was found by the Civil Service Commission to harbor a bias against African American individuals.

13.     In 2010, the Plaintiff was injured while working on duty. Defendant Greenstein and Director Mullan of the Medical Unit had falsely cleared the Plaintiff for duty. Normally, the Medical Unit sends a letter to police officers who were injured on duty informing them they have been cleared to return. The Plaintiff never received such letter.

14.     The Plaintiff wrote to Director Mullan twice and clarified that she had not been cleared for duty, the Plaintiff did not receive a response to any of her letters.

15.     The Plaintiff then wrote to her supervisor, Captain Greeland and Director Mullan outlining the Medical Unit's conduct and Director Mullan's failure to respond to her letters. The Plaintiff further requested that the Department restore her leave time.

16.     In 2010, three months after the Plaintiff's letter, Director Mullan filed a

memorandum stating the Plaintiff should be carried as "injured on duty" falsely stating the Plaintiff reported a new injury.

17.       One month following the filing of the memorandum, the Defendant Greenstein wrote a letter falsely suggesting that the Plaintiff was not complying with her physical therapy regimen. The Plaintiff responded correcting these false statements and addressed Defendant Greenstein's insistence on clearing the Plaintiff for duty in contravention of her treating physician's orders.

18.       Upon returning to full duty in 2011, the Plaintiff reviewed her time records and noticed that the leave she was entitled to under union contract (due to her work-related injury) was docked by the administrative clerk, Ms. Canavan.

19.       Around the fall of 2011, the Plaintiff had a routine appointment with Defendant Greenstein, who set up an appointment with the Department's physician in December of 2011. Defendant Greenstein did not tell the Plaintiff that she was cleared for duty. The Department did not notify the Plaintiff that she was cleared for duty, and they never informed her of her return date.

20.       Upon information and belief, Director Mullan informed Defendant Russell that the Plaintiff had been cleared to return to duty on November 21, 2011. Further, upon information and belief, Director Mullan informed Defendant Russell that the Medical Unit could not reach the Plaintiff and it was the Plaintiff's habit to not return phone calls.

21.       During this entire time Plaintiff was on medical leave, Director Mullan and Defendant Greenstein never responded to the Plaintiff's inquiries regarding her medical leave status.

22.       On November 21, 2011 Defendant Russell directed that the Plaintiff be treated as

Absent Without Leave (AWOL) and that her pay and benefits terminate.

23.     The Plaintiff first learned of her AWOL status when she failed to receive her paycheck.

24.     Upon information and belief, it is the Boston Police Department's policy, that when an officer has been injured on duty they must be cleared by a Department Physician before they can return to duty

25.     Upon information and belief, Defendant Russell did not make any attempt to determine why the Plaintiff had been cleared for duty without first being examined by a Department physician.

26.     Upon information and belief, after the Plaintiff returned to full duty, Defendant Hayes unilaterally called Defendant Russell to indicate that he, Defendant Hayes believed the Plaintiff was a "problem" and had been "disrespectful" and "not cooperative."

27.     Defendant Hayes made these statements despite never having worked with or met the Plaintiff.

28.     On information and belief, Defendant Hayes has long harbored a dislike for the Plaintiff based on her race and/or gender.

29.     The Plaintiff reported her status to the Union, and the Union wrote a letter advocating for the Plaintiff's contractual rights and raising the harassment and discrimination she experienced to the Department. Union Vice President Ronald MacGillivray ordered that letter not be sent.

30.     On December 14, 2011 the Plaintiff reported for her scheduled appointment with Defendant Greenstein and the Department physician and was cleared to return to duty on January 2, 2012.

5

31.     After the Plaintiff was cleared for duty and returned to work on the midnight shift at station E-13, Defendant Russell filed charges against the Plaintiff with the Internal Affairs Division (IAD) claiming that the Plaintiff had been AWOL and refused to return her to duty, and claiming that her return date should have been  December 22, 2011, not January 2, 2012 as Plaintiff was informed by Defendant Greenstein and the Department physician.

32.     Detective Daniel Humphries was the Internal Affairs Division Director at this time and has an obligation to conduct any investigation in a swift and fair manner.

33.     When the Plaintiff returned to active duty, the clerk, Marlene Canavan, failed to schedule the Plaintiff for time on the shooting range so that the Plaintiff could qualify to have her service weapon returned to her. When Plaintiff raised the issue with Defendant Russell, he made a sexist and derogatory remark to the Plaintiff suggesting that he did not expect the Plaintiff to qualify on her initial test.

34.     Plaintiff did ultimately take and pass the test.

35.     On June 1, 2012 the Plaintiff inquired as to her vacation time being docked from her time under AWOL status.

36.      On or about June 8, 2012, Defendant Russell, the commander of the Boston Police Department, arrived at the E-13 station where the Plaintiff was employed, at roughly 1:00 AM during the Plaintiff's shift, for the sole purpose of meeting with the Plaintiff.

37.     The Plaintiff was concerned due to the abrupt nature of the meeting and attempted to obtain union representation to protect her rights under her collective bargaining agreement. The Plaintiff's union representation was not on duty that evening, and upon information and belief, Defendant Russell was aware of this. Lieutenant Sweeney of the Boston Police Department accompanied the Plaintiff as a witness.

38.      During this meeting, Defendant Russell began engaging the Plaintiff regarding her AWOL status in November of 2011 and became agitated when the Plaintiff did not answer due to her lack of union representation.

39.      Defendant Russell ordered Plaintiff to turn over her badge, firearm, and Boston Police identification. While the Plaintiff was attempting to safely remove her firearm, Defendant Russell lunged at the Plaintiff, pushed the Plaintiff's hands off of her firearm, and grabbed her firearm out of the retention holster from the front of the Plaintiff's body.

40.      It is against protocol for an officer of any rank to be instructed or trained to remove a firearm from a retention holster in the front of an individual's body.

41.      As Defendant Russell lunged at the Plaintiff, the Plaintiff instinctively jerked her body away to protect herself, resulting in plaintiff sustaining a back sprain.

42.      Defendant Russell was able to wrangle the firearm out of the Plaintiff's holster and continued to eject a live round in front of the Plaintiff, contrary to Boston Police Department's rules and regulations for safely handling a firearm/weapon.

43.      Defendant's Russell's actions put the Plaintiff in fear for her life and put the Plaintiff and Lieutenant Sweeney in great risk.

44.      The Plaintiff's AWOL status to which Defendant Russell referred in the above interaction was subsequently rescinded and expunged by the Department as being without any basis or merit, after a full trial board hearing.

45.      In or around June of 2012, Captain Russell placed the Plaintiff on an undefined, unpaid leave in which she was not allowed to accrue sick time. The Plaintiff filed an internal police report due to this incident.

46.      On or about July of 2012, Officer James filed an assault and battery complaint in

West Roxbury District Court against Defendant Russell due to his actions on June 8, 2012. This case was transferred to Charlestown District Court in 2014 and then Dedham District Court in 2015.

47.     In April of 2013, the Plaintiff filed an action with the Massachusetts Commission Against Discrimination (MCAD) on the basis of race, sex, and age.

48.     The Plaintiff's original MCAD complaint was amended twice.

49.     Defendant Russell testified in the MCAD proceedings that he would not have brought the AWOL charges against the Plaintiff had the Plaintiff not filed an internal incident report regarding the June 8, 2012 incident involving the removal of the Plaintiff's firearm from her person.

50.     From June of 2012 to September of 2014, the Plaintiff was on an undefined, unpaid leave without any employment status. Further, the Plaintiff was not receiving any compensation during this time.

51.     In 2013, the Plaintiff discovered Defendant Russell was transferred and requested to return to work if she could obtain the necessary clearance.

52.     Despite this request and other requests, the Plaintiff was not afforded an opportunity to return to work for the Boston Police Department in any capacity during June 2012 and September of 2014. The Boston Police Department failed to provide the Plaintiff with any justification for their denial.

53.     In 2013, while the Plaintiff was without any employment status with the Boston Police Department, the Boston Police Department launched an investigation into the Plaintiff's noncompliance with her hair test, prior to her compliance window closing.

54.     Despite not having employment status the Plaintiff attempted to take the exam.

55.     After denying the Plaintiff the ability to take the hair test, she was charged with a refusal. The alleged refusal allowed the Boston Police Department to state that the Plaintiff had a false positive result.

56.     In August and September of 2014, the Boston Police Department created unnecessary obstacles in her attempts to return to active duty. Some of these obstacles included but are not limited to; requiring the Plaintiff to see physicians who could not evaluate her and applying unreasonable fitness standards that deviated from standard protocol.

57.     In September of 2014, the Plaintiff was cleared for modified duty, which would have allowed the Plaintiff to work on desk duty however the Boston Police Department placed her on administrative leave on September 12, 2014 continuing to be without pay or benefits.

58.     In March of 2015, without prior notice, a termination notice was delivered (not mailed) to the Plaintiff's family home and was left in the hallway.

59.     The Plaintiff never received the EEOC Dismissal and Notice of Rights sent in August of 2017. The EEOC acknowledged the Notice was mailed back to the EEOC as "attempted-not known-unable to forward" via email to Plaintiff on December7, 2018.

60.     The EEOC mailed the original return notice to the Plaintiff on December 7, 2018.

## COUNT ONE
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**
**Disparate Treatment**
**(All Defendants)**

61.     Plaintiff re-alleges and re-asserts all of the allegations contained in the preceding paragraphs as if fully set forth herein.

62.     Plaintiff is an African-American female individual.

63.      As an African-American female employee of the Boston Police Department and the City of Boston, Plaintiff was treated differently than the male Caucasian employees of the Boston Police Department and the City of Boston, as described herein.

64.      But for the Plaintiff being an African-American female, she would not have been the subjected to the adverse employment actions (both discriminatory and retaliatory) as described herein.

65.      Defendants, City of Boston and Boston Police Department are vicariously liable for the disparate treatment levied against Plaintiff by its employees, officers, and/or agents in the scope of their employment.

66.      Plaintiff has suffered emotional distress, physical harm, and pecuniary harm as a result of the Defendants' actions.

## COUNT TWO

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**
**Hostile Work Environment**
**(All Defendants)**

67.      Plaintiff re-alleges and re-asserts all of the allegations contained in the preceding paragraphs as if fully set forth herein.

68.      Over the course of her employment with the Defendants, City of Boston and Boston Police Department, the Plaintiff was subjected to unwelcome discriminatory behavior by her co-workers and her supervisors. This behavior included, but was not limited to, verbal comments and written statements.

69.      The City of Boston and Boston Police Department's actions/omissions were based upon the Plaintiff being an African-American female.

70.      The Defendants' actions were sufficiently severe and pervasive as to impact on

Plaintiff's ability to perform her job duties.

71.     The Defendants knew about each of the discriminatory actions towards the Plaintiff and failed to adequately investigate and address the behavior, and therefore, failed to take prompt, corrective action to redress the discriminatory actions.

72.     The Defendants actions created a hostile work environment, which the Plaintiff was subjected to during the course of her employment.

73.     The Defendants are vicariously liable for the hostile work environment against Plaintiff by and through its employees, officers, and/or agents.

74.     Being subjected to a hostile working environment by the Defendants' actions, the Plaintiff has suffered emotional distress, physical harm, and pecuniary harm.

## COUNT THREE
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**
**Retaliation**
**(All Defendants)**

75.     Plaintiff re-alleges and re-asserts all of the allegations contained in the preceding paragraphs as if fully set forth herein.

76.     Plaintiff engaged in the protected activity of: (a) reporting the discriminatory and retaliatory, and (b) objecting to Defendants discriminatory and retaliatory actions toward her.

77.     The Defendants' are vicariously liable for the retaliatory actions that were taken against Plaintiff by and through its employees, officers, and agents.

78.     Plaintiff has suffered emotional distress, physical harm, and pecuniary harm as a result of the Defendants' actions.

## COUNT FOUR
**Violation of Equal Rights Act – Discrimination on the Basis of Race and Sex**
**(Disparate Treatment)**

**M.G.L. c. 93, § 102**
**(All Defendants)**

79.      Plaintiff re-alleges and re-asserts all of the allegations contained in the preceding paragraphs as if fully set forth herein.

80.      As detailed above, the City of Boston and Boston Police Department employed the Plaintiff as an employee.

81.      Plaintiff is an African-American female individual.

82.      As a female employee of the Boston Police Department and the City of Boston, the Plaintiff was treated differently than the male employees of the Boston Police Department, as described herein.

83.      But for Plaintiff being an African-American female, she would not have been subjected to the adverse employment actions (both discriminatory and retaliatory) as described herein.

84.      Moreover, circumstances exist as set forth herein that give rise to a reasonable inference of discrimination by the City of Boston and Boston Police Department against Plaintiff on the basis of her race and sex.

85.      The Defendants, the Boston Police Department and the City of Boston are liable for the acts/omissions of its employees, officers, and agents.

86.      As a result of the Defendants, Boston Police Department and City of Boston's actions, Plaintiff has suffered severe emotional distress, physical injury, and pecuniary harm.

**<u>COUNT FIVE</u>**
**Violation of Civil Rights Act**
**M.G.L. c. 12, § 11I**
**(All Defendants)**

87.      Plaintiff re-alleges and re-asserts all of the allegations contained in the preceding paragraphs as if fully set forth herein.

88.      As detailed above, the Boston Police Department and the City of Boston employed Plaintiff as an employee, at all times relevant.

89.      Plaintiff attempted to complete her job duties and work in an environment free of discrimination and retaliation but was precluded from doing so due to the acts/omissions of the Boston Police Department and the City of Boston (including its employees, officers, and agents), as described herein.

90.      Defendants violated the Plaintiff's constitutional right to not be subjected to racial and sexual discrimination/harassment, and work in environment of gender and racial equality, when they took the aforementioned actions against her. Such conduct had the effect of unreasonably interfering with Plaintiff's work performance by -- objectively and subjectively -- creating an intimidating, hostile, humiliating, and offensive work environment.

91.      The Defendants, the Boston Police Department and the City of Boston is liable for the actions/omissions of its employees, officers, and agents.

92.      As a result of the Defendants' actions, Plaintiff has suffered severe emotional distress, physical harm, and pecuniary harm.

## COUNT SIX
### Violation of G.L. c. 151B, § 4 (1)
### (All Defendants)

93.      Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

94.      Under Massachusetts law, it is unlawful for an employer, or any agent of the employer, to discriminate against an employee in the terms of that employee's conditions of employment on the basis of that employee's sex or race.

13

95.     The Defendants, the Boston Police Department and the City of Boston were aware that the discriminatory and harassing conduct would likely cause Plaintiff serious harm.

96.     The Defendants, the Boston Police Department and the City of Boston recklessly disregarded the likelihood that serious harm would arise from the discriminatory and harassing conduct against Plaintiff.

97.     Plaintiff suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of the City of Boston and Boston Police Department.

98.     The City of Boston and Boston Police Department are vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

99.     Plaintiff is entitled to all appropriate relief for Defendants' actions, including punitive damages for the City of Boston's and Boston Police Department's failure to act in regard to the discriminatory and offensive work environment Plaintiff was forced to work in.

100.    Plaintiff has suffered emotional distress, physical harm, and pecuniary harm as a result of Defendant's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff claims:

1. Monetary damages in an amount to be determined at trial;

2. Statutory treble damages for all unpaid wages and monies owed to Plaintiff;

3. Statutory interest at the rate of twelve percent (12%);

4. Attorney's fees and costs;

5.   Punitive damages; and

6.   Such other legal or equitable relief as the Court may award.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,
By Her Attorneys,


*/s/ Emily E. Smith-Lee*
Emily E. Smith-Lee (BBO#634223)
esmithlee@slnlaw.com
Aileen G. Konanez (BB0 #696817)
akonanez@slnlaw.com
SLNLAW LLC
46 South Main Street
Sharon, MA 02067
Tel: 781-784-2322
Fax: 781-328-1772

Dated: March 7, 2019