UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRENDA JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 19-10430-FDS |
| | ) | |
| BOSTON POLICE DEPARTMENT, | ) | |
| CAPTAIN PAUL RUSSELL, | ) | |
| DETECTIVE DANIEL HUMPHRIES, | ) | |
| CAPTAIN MARK HAYES, ZELMA | ) | |
| GREENSTEIN, and CITY OF BOSTON, | ) | |
| | ) | |
| Defendants. | ) | |

## *CORRECTED* MEMORANDUM AND ORDER ON MOTION TO DISMISS

SAYLOR, C.J.

This is a case of alleged employment discrimination. Plaintiff Brenda James is an African-American woman and a former Boston police officer. She has filed suit against the Boston Police Department, the City of Boston, Captain Paul Russell, Captain Mark Hayes, Detective Daniel Humphries, and Zelma Greenstein for discrimination on the basis of race and gender. The complaint alleges that defendants violated her rights under Title VII, the Massachusetts Equal Rights Act, the Massachusetts Civil Rights Act, and Massachusetts General Laws Chapter 151B.

Although James initially brought this claim with the assistance of counsel, she is now proceeding *pro se*. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

For the following reasons, the motion to dismiss will be granted in part and denied in part.

## I. Background

Unless otherwise noted, the following facts are as alleged in the complaint.

### A. Factual Background

Brenda James is a resident of Boston, Massachusetts. (Compl. ¶ 1). From 1994 until March 2015, she worked in various capacities as a police officer with the Boston Police Department. (*Id.* ¶ 5-6). Before the events at issue, she had no disciplinary history with her employer. (*Id.*).

At some point in 2010, James was required to submit to an annual drug test. (*Id.* ¶ 8-11). She attempted to reschedule the test on the ground that she had braided her hair and it required special attention to unbraid. (*Id.*). The Department allegedly refused to reschedule the test, and she was detained for more than two hours by the Boston Police medical unit while she tried to have it rescheduled. (*Id.* ¶ 9,10).

That same year, James was injured while on duty and placed on leave. (*Id.* ¶ 13-17). According to the complaint, at some point afterward, she was "falsely cleared" for duty without notice. (*Id.* ¶ 13-14). Only after contesting the clearance was she again placed on "injured on duty" leave. (*Id.* ¶ 16).

The complaint alleges that James was mistreated by Zelma Greenstein, a nurse practitioner with the medical unit. (*Id.* ¶ 13, 17). She alleges that Greenstein was the source of her false clearance for duty and that, even once the mistake was rectified, Greenstein wrote a letter stating that she was not complying with her physical-therapy requirement. (*Id.*).

In 2011, James returned to full duty. When she did so, her time records allegedly indicated that she had been docked leave to which she was entitled. (*Id.* ¶ 18). Somewhat confusingly, she also alleges that she was falsely cleared for work in 2011, once again without

notice.  (*Id.* ¶ 19).  That clearance allegedly occurred in contravention to department policies.  (*Id.* ¶ 24-25).  She further alleges that the clearance occurred when Director Mullan—whose exact role in these events is not otherwise clear—informed Captain Paul Russell that she was cleared to work on November 21, 2011.  (*Id.* ¶ 20).

On November 21, 2011, Russell directed the department to treat her as absent without leave (AWOL), including the termination of her pay and benefits.  (*Id.* ¶ 22).  Shortly thereafter she returned to full duty.  (*Id.* ¶ 26).  Around that time, Captain Mark Hayes, who had never worked with her, allegedly called Russell to identify her as a "problem" and that she was "disrespectful" and "not cooperative."  (*Id.* ¶ 26-27).  According to the complaint, Hayes "never worked with or met" James and "has long harbored a dislike for [her] based on her race and gender."  (*Id.* ¶ 27-28).

On December 14, 2011, James reported for a scheduled appointment with Greenstein and the department physician, who cleared her to return to duty on January 2, 2012.  (*Id.* ¶ 30).  Upon her return, according to the complaint, Russell filed charges against her with the internal affairs division for her AWOL status.  (*Id.* ¶ 31).  Furthermore, the clerk delayed scheduling time for her on the shooting range to have her service weapon returned, and Russell allegedly made a "sexist and derogatory remark" when she raised the issue.  (*Id.* ¶ 32).

According to the complaint, on June 8, 2012, Russell approached James during her shift to meet with her.  (*Id.* ¶ 36).  She was "concerned due to the abrupt nature of the meeting" and attempted to obtain union representation but was unable to do so.  (*Id.* ¶ 37).  Russell allegedly instructed her to turn over her badge, firearm, and Boston Police identification.  (*Id.* ¶ 39).  According to the complaint, rather than wait for the firearm to be removed, he lunged at her and grabbed the gun from her holster.  (*Id.* ¶ 39-43).  James was allegedly placed on unidentified,

unpaid leave after the incident. (*Id.* ¶ 45).

In July 2012, James filed a complaint asserting assault and battery against Russell in state court. (*Id.* ¶ 46). In April 2013, she filed an action with the Massachusetts Commission Against Discrimination (MCAD) alleging discrimination on the basis of race, sex, and age. (*Id.* ¶ 47).

From June 2012 through September 2014, James remained on "undefined, unpaid leave without any employment status." (*Id.* ¶ 50). According to the complaint, her requests to return to work were denied without justification and "unnecessary obstacles" were created to prevent her from returning. (*Id.* ¶ 52, 56). In 2013, the police department allegedly launched an investigation into her refusal to take a drug test from 2010 and denied her the opportunity to provide a sample. (*Id.* ¶ 53-55).

James was cleared for duty in September 2014, but placed on administrative leave. (*Id.* ¶ 57). She was terminated for cause on March 18, 2015. (*Id.* ¶ 58; Def. Mot. Dismiss 1).

### B. **Procedural Background**

On March 7, 2019, James filed this action alleging six counts against all defendants. She raises three counts under Title VII, 42 U.S.C. § 2000e, et seq., for disparate treatment, hostile work environment, and retaliation (Counts 1-3); one count under the Massachusetts Equal Rights Act (MERA), Mass. Gen. Laws Ch. 93 § 102, for discrimination on the basis of race and gender (Count 4); one count under the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws Ch. 12 § 11I, for discrimination on the basis of race and gender, retaliation, and a hostile work environment (Count 5); and one count under Mass. Gen. Laws Ch. 151B (Chapter 151B), for discrimination on the basis of race and gender (Count 6).

On July 19, 2019, defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III. Analysis

### A. Boston Police Department as a Party

The Boston Police Department is not an entity separate from the City of Boston. *Douglas v. Boston Police Dep't, No.* WL 2719970, at *2 (D. Mass. July 1, 2010) (collecting cases). Accordingly, the Boston Police Department is not a proper party defendant to this lawsuit, and the claims against it will be dismissed. *Id.* (citing *Curran v. City of Boston*, 777 F. Supp. 116, 120 (D. Mass. 1991)).

### B. Counts 1, 2, and 3

Defendants contend that the Title VII claims, Counts 1, 2, and 3, should be dismissed as untimely or, in the alternative, that they should be dismissed as to the individual plaintiffs.

Title VII claims are subject to unique procedural requirements. In particular, because "litigation is not a remedy of first resort, . . . a would-be plaintiff [under Title VII] must first exhaust h[er] administrative remedies." *Rivera-Diaz v. Humana Insurance of Puerto Rico, Inc.*, 748 F.3d 387, 389 (1st Cir. 2014) (quotations omitted). "This task embodies two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency." *Id.* at 289-90 (quotations omitted). The latter component, the right-to-sue letter, informs the putative plaintiff that her administrative remedies have been exhausted and that she may bring a civil action. *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 142 (1st Cir. 2012). A plaintiff "has ninety days to file suit" "[u]pon receiving a right-to-sue letter." *Rivera-Diaz*, 748 F.3d at 390. As far as receiving this right-to-sue letter goes, "[t]he person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge." 29 C.F.R. § 1601.7(b).

There is no dispute that the EEOC received plaintiff's filing as part of her MCAD submission. (*See* Def. Mot. Dismiss, Ex. D). Furthermore, it is undisputed that the EEOC declined to bring a case and issued a right-to-sue letter. (Compl. ¶ 59). The crucial question is when the right-to-sue letter was received.

According to the complaint, plaintiff discovered that the letter was sent when, in a December 7, 2018 e-mail, the EEOC noted that the letter was returned "attempted-not known-

unable to forward." (*Id.*). Defendants contend that the letter was sent in August 2017 and, because James "apparently neglected to maintain an up-to-date mailing address with the EEOC," her untimeliness cannot be excused. (Def. Mot. 8).

Even if it is true, the fact that plaintiff did not provide a current address to the EEOC cannot be ascertained from the face of the complaint. The complaint simply alleges that plaintiff was not aware of the rejection until December 7, 2018; it does not say why she was not previously notified. Without knowing why the letter was returned as "attempted-not known-unable to forward," it would be inappropriate at this stage of the proceedings to draw the inference that she had changed her address without providing notice to the EEOC. That issue may, of course, be revisited at summary judgment, but the Title VII claims cannot be found untimely under Rule 12(b)(6) and the motion will be denied as to that issue.[1]

However, the Title VII claims against defendants Russell, Humphries, Hayes, and Greenstein will be dismissed. There is no individual employee liability under Title VII. *Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir. 2009).

Accordingly, defendants' motion will be granted as to the Title VII claims against the four individual defendants, but denied as to the City of Boston.

C. **Counts 4 and 5**

The claims under MERA and MCRA, Counts 4 and 5 respectively, are preempted by Chapter 151B. Chapter 151B protects employees from discrimination on the basis of "race,

---

[1] There is a presumption that a "in the absence of evidence to the contrary, a notice provided by a government agency is deemed to have been placed in the mail on the date shown on the notice and received within a reasonable time thereafter." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012) (citing *Me. Med. Ctr. v. United States*, 675 F.3d 110, 114 (1st Cir. 2012)). That presumption may well be relevant at the summary judgment stage, but prior to the development of any evidentiary record, it cannot form the basis for dismissal for failure to state a claim.

color, religious creed, national origin, sex, gender identity, sexual orientation, . . . , genetic information, pregnancy . . ., ancestry, or status as a veteran." Chapter 151B is intended to be a "comprehensive remedial statute" with an administrative filing process not unlike that described above for Title VII. *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 585-86 (1994). The SJC has repeatedly held that Chapter 151B, where applicable, "provides the *exclusive* remedy for employment discrimination not based on preexisting tort law or constitutional protections . . . ." *Id.* (quoting *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 513 (1985)) (emphasis added). "Accordingly, where [Chapter] 151B applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation of [MERA] or [MCRA]." *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 555 (1996) (internal citations omitted); *see also Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 360 (D. Mass. 2013) (granting summary judgment on claim under MERA because it could also be brought under Chapter 151B); *Mouradian v. Gen. Elec. Co.*, 23 Mass. App. Ct. 538, 543 (1987) (dismissing claims under common law and MCRA that could have been brought under Chapter 151B). That preemption applies regardless of whether a plaintiff has brought, or is still able to bring, a claim under Chapter 151B. *See, e.g., Green*, 422 Mass. at 554-59.

Counts 4 and 5 are preempted by Chapter 151B because those claims are, in substance, the Chapter 151B claims re-pleaded under different statutes. Count 4 alleges that plaintiff "was treated differently than the male employees of the Boston Police Department" and that she suffered harms because of discrimination on the basis of her race and sex. (*Id.* ¶ 82, 84,86). Count 5 similarly alleges "racial and sexual discrimination/harassment." (*Id.* ¶ 90). Because the factual and legal allegations in both counts are covered by Chapter 151B, that statute provides the exclusive state-law remedy. Defendants' motion to dismiss will therefore be granted as to

those counts.

### D. Count 6

Count 6 asserts a claim under Chapter 151B. Chapter 151B provides "two largely independent avenues for redress of violations of the antidiscrimination laws of the Commonwealth, one through the MCAD . . . and the other in the courts." *Christo v. Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817 (1988). To file a civil complaint, a prospective plaintiff must file a timely complaint with MCAD, and may only file a civil action after 90 days have passed or with the commissioner's leave. *See Charland*, 417 Mass. 580 at 583 (quoting *Christo*, 402 Mass. at 816). If that procedure is followed, a plaintiff may bring a civil action under Chapter 151B within "three years after the alleged unlawful practice occurred." Mass. Gen. Laws Ch. 151B § 9. For purposes of the limitations period, employment discrimination "occurred" when the claims accrued—typically, when the employee suffered a "tangible harm" from the discriminatory conduct. *See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 404-05 (2016); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 49-50 (1st Cir. 1999).

Count 6 is untimely and must be dismissed. First, the claim surely accrued no later than April 2013, when plaintiff filed her complaint with MCAD. (Compl. ¶ 47); *cf. Verdrager*, 474 Mass. at 404 ("[P]laintiff timely filed her first MCAD complaint within 300 [days] of her [demotion], which was the point when the negative evaluations were *first* applied to deny the plaintiff particular benefits or positions and therefore, the point when her claims accrued") (internal quotations and alterations omitted) (emphasis added). If that were the case, the Chapter 151B claim would be untimely by approximately three years. But even assuming that her claim did not accrue until she was terminated on March 18, 2015, she only had until March 18, 2018 to

bring this claim. Because she did not file this lawsuit until March 7, 2019, her Chapter 151B claim is time-barred and must be dismissed.

## IV. Conclusion

For the foregoing reasons, defendant's motion is GRANTED (1) as to defendants the Boston Police Department, Captain Paul Russell, Detective Daniel Humphries, Captain Mark Hayes, and Zelma Greenstein as to all counts and (2) as to all defendants as to Counts 4, 5, and 6, and is otherwise DENIED.

**So Ordered.**

Dated: January 9, 2020

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court